FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMIE S.,<br><br>              Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Commissioner of<br>Social Security,<br><br>              Defendant. | No.   2:21-cv-00084-SMJ<br><br>**ORDER ON CROSS MOTIONS<br>FOR SUMMARY JUDGMENT** |

Plaintiff J.S. appeals the Administrative Law Judge's (ALJ) denial of her application of disability benefits. She alleges that the ALJ erred by (1) improperly evaluating the medical opinion evidence; (2) improperly rejected Plaintiff's severe impairments; and (3) failing to conduct an adequate evaluation at step three; (4) rejecting Plaintiff's subjective complaints; and (5) failing to conduct an adequate analysis at step five. ECF No. 11 at 9. Defendant disputes these contentions and asks the Court to affirm the ALJ's determination. ECF No. 15.

Before the Court, without oral argument, are the parties' cross-motions for summary judgment. ECF Nos. 11, 15. After reviewing the administrative record, the parties' briefs, and the relevant legal authority, the Court is fully informed. For the reasons discussed below, the Court remands to the Social Security

Administration for additional proceedings.

## PROCEDURAL HISTORY[1]

This case concerns a closed period of review: Plaintiff protectively filed for disability on September 23, 2019, alleging an onset date of April 10, 2007, with a date last insured ("DLI") of September 30, 2008. AR 17, 19. Plaintiff's application was denied on November 13, 2019, and denied again upon reconsideration. AR 17. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On September 23, 2020, ALJ Marie Palachuk held a hearing and subsequently issued an unfavorable decision. AR 17–28. Plaintiff petitioned the Appeals Counsel for review of the ALJ's decision, and the Appeals Council denied review on December 10, 2020. AR 1–3. Plaintiff now petitions this Court for review of the ALJ's decision denying disability benefits. ECF No. 1.

## DISABILITY DETERMINATION

A "disability" is defined, for the purposes of receiving disability insurance benefits, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1] The facts of the case are set forth in the administrative record and the parties' briefs. *See* ECF Nos. 8, 11, 15, 16. The parties have discussed any additional relevant facts in their briefing. *See generally id.* The Court thus provides only a short procedural summary here.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 2

period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The ALJ uses a five-step sequential evaluation process to determine whether a claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ considers the claimant's work activity, if any. 20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). If the claimant is doing any substantial gainful activity, the ALJ will find the claimant not disabled and deny their claim. *Id*. If the claimant is not doing any substantial gainful activity, the evaluation proceeds to step two.

At step two, the ALJ considers the medical severity of the claimant's impairment(s). 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). If they do not have a severe medically determinable physical or mental impairment that meets the twelve-month duration requirement in Section 404.1509, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find the claimant not disabled and deny their claim. *Id*. If the claimant does have a severe physical or mental impairment, the evaluation proceeds to step three.

At step three, the ALJ also considers the medical severity of the claimant's impairment(s). 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If they have an impairment(s) that meets or equals one of the Social Security Administration's listings in appendix 1 of this subpart and meets the duration

requirement, the ALJ will find the claimant disabled. *Id*.; 404 Subpt. P App. 1. If their impairment(s) does not meet or equal a listed impairment, the evaluation proceeds to step four.

At step four, the ALJ considers the claimant's residual functional capacity and their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). If they can still do their past relevant work, the ALJ will find the claimant not disabled and deny their claim. *Id*.; *see also* §§ 416.920(f), (h), 416.960(b). If they cannot, the evaluation proceeds to step five.

At the fifth and final step, the ALJ considers the claimant's residual functional capacity and their age, education, and work experience to see if they can adjust to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), (f), 416.920(a)(4)(v), (f). If they can adjust to other work, the ALJ will find the claimant not disabled and deny their claim. *Id*. If they cannot, the ALJ will find the claimant disabled and grant their claim. *Id*.; *see also* §§ 404.1520(g), (h), 404.1560(c).

The burden shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). If the claimant makes such a showing, the burden then shifts to Defendant to show work within the claimant's capabilities. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also* SSR 13-2P, 2013 WL 621536, at *4 ("The claimant has the burden of proving disability

throughout the sequential evaluation process. Our only burden is limited to producing evidence that work the claimant can do exists in the national economy at step 5 of the sequential evaluation process."). To find a claimant disabled, their impairments must not only prevent them from doing their previous work, but also (considering their age, education, and work experience) prevent them from doing any other substantial gainful work that exists in the national economy. *Id*.; 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## ALJ FINDINGS

At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity during the period from her alleged onset date of April 10, 2007, through her last insured date of September 30, 2008. AR 19.

At step two, the ALJ found that Plaintiff suffered from severe impairments, including: diabetes mellitus, obesity, left ear hearing loss, bipolar disorder, and anxiety disorder. *Id.*

At step three, the ALJ found that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impartments." AR 20.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 27.

At step five, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy and thus was not disabled. *Id.*

Based on the ALJ's determination that Plaintiff has the residual functional capacity to perform medium work subject to certain limitations—she was limited to superficial interaction with the public and non fast-paced work—the ALJ determined that Plaintiff could perform occupations requiring sedentary, light, and medium levels of exertion. AR 23, 27.

## STANDARD OF REVIEW

Reviewing courts must uphold an ALJ's disability determination if it applied the proper legal standards and supported its decision with substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The ALJ must base its determination on "more than a mere scintilla" of evidence, *id*. at 1154, but need not support its decision by a preponderance of the evidence. *Molina*, 674 F.3d at 1111. If the evidence supports more than one rational interpretation, and the ALJ has supported its decision with inferences drawn reasonably from the record, the Court must uphold its decision. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

1        Moreover, the Court will not reverse an ALJ's decision if it committed

2    harmless error. *Molina*, 674 F.3d at 1111. The burden to show harmful error lies

3    with the party challenging the ALJ's determination. *See Shinseki v. Sanders*, 556

4    U.S. 396, 409 (2009).

5                                            **DISCUSSION**

6    **A.    Medical Opinion Evidence**

7        The Ninth Circuit recognized a hierarchy among the sources of medical

8    opinions, known as the treating physician rule or the treating source rule, for claims

9    filed before March 27, 2017.[2] *Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983); *see*

10   *also* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *Black & Decker Disability Plan v.*

11   *Nord*, 538 U.S. 822, 829 (2003). Specifically, the ALJ must articulate "specific and

12   legitimate reasons supported by substantial evidence in the record" in order to

13   "reject the treating doctor's ultimate conclusions" when the treating doctor's

14   opinion was contradicted by another doctor, or "clear and convincing reasons" if it

15   was not. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

16       In 2017, the Commissioner promulgated new regulations, effective for claims

17   filed on or after March 27, 2017, such as Plaintiff's. *See* 20 C.F.R. § 404.1520c.

18   These regulations make several changes which are relevant here. For instance, the

19

20   ---
     [2] The regulations were updated in 2017 to eliminate this hierarchy for new claims.
     *See* 20 C.F.R. § 404.1520c.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 7

regulations alter the definition of "medical opinion" and the way that the ALJ considers and articulates their consideration of medical opinions. 20 C.F.R. § 404.1520c(a)–(c). The ALJ now considers the persuasiveness of a medical opinion using five factors: (1) supportability; (2) consistency; (3) relationship with claimant;[3] (4) specialization; and (5) other. 20 C.F.R. § 404.1520c(c). Because the first two factors are the most important, the ALJ *must* articulate their analysis as those two factors. 20 C.F.R. § 404.1520c(b)(2). The new regulations eliminate the hierarchy of medical opinions and the treating physician rule. 20 C.F.R. § 404.1520c(a); *see also* 82 Fed. Reg. at 5853.

## 1.    Dr. Ostrow

At the hearing, the ALJ heard testimony from Dr. Arnold Ostrow regarding Plaintiff's physical functioning during the period of claimed disability. AR 24. Dr. Ostrow opined that Plaintiff could (1) occasionally lift 20 pounds and frequently could lift 10 pounds, (2) stand and/or walk up to six hours in an eight-hour day, (3) frequently finger, handle, grip, and manipulate with both upper extremities, (4) occasionally operate foot pedals bilaterally, and (5) could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. AR 24; 40–41. The ALJ

---

[3] This factor encompasses several subfactors, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the existence of an examining relationship. 20 C.F.R. § 404.1520c(c)(3)

found Dr. Ostrow's opinion "mostly persuasive," though the ALJ noted that "the limitations [Dr. Ostrow] assessed seem more consistent with the records outside the relevant period than the records within." AR 25. Plaintiff contends that this was "an incorrect basis" for rejecting Dr. Ostrow's finding and submits that "Dr. Ostorw's opinion was based solely on the records before the date last insured." ECF No. 11 at 12.

In partially rejecting Dr. Ostrow's opinion, the ALJ found that Plaintiff's "electrodiagnostic study from April 2008 showed no peripheral neuropathy in the lower extremities, and there is no other explanation in the evidence for her complaints of lower extremity pain." AR 25. The ALJ also found that there was "no support for a limitation to occasional operation of foot pedals or climbing ramps or stairs" and "[t]he evidence from the relevant period also offers no support for a restriction to light lifting and carrying or frequent manipulation with both upper extremities." *Id.*

The Court finds that the ALJ adequately assessed the supportability and consistency of Dr. Ostrow's opinion. In arguing that the ALJ incorrectly discounted Dr. Ostrow's opinion, Plaintiff notes that Dr. Ostrow only reviewed exhibits relating to time periods before the date last insured, not after. ECF No. 11 at 13. The Court agrees with Defendant that this is a flawed argument. The ALJ did not find that Dr. Ostrow relied on evidence after the relevant period, but rather that his

1    findings were more consistent with evidence after the relevant period. AR 25.

2    Plaintiff offers no evidence suggesting that there is support for Dr. Ostrow's

3    assessed limitations prior to the date last insured. The Court therefore finds that the

4    ALJ adequately assessed Dr. Ostrow's opinion and finds that the ALJ's

5    determination that Dr. Ostrow's opinion was not fully persuasive is supported by

6    substantial evidence.

7    **B.    The ALJ erred at step two by assessing Plaintiff's neuropathy and leg pain and migraine headaches as nonsevere impairments**

8    Plaintiff argues that the ALJ reversibly erred at step two by not properly

9    assessing D.S.'s disorders. ECF No. 11 at 13. Specifically, Plaintiff assigns error to

10    the ALJ's conclusion that Plaintiff's neuropathy and leg pain and migraine

11    headaches were nonsevere impairments. In failing to list these impairments as

12    severe, the ALJ stated:

13        [A]fter reviewing the objective findings and the claimant's complaints,
14        the undersigned finds that these impairments did not cause more than
        a minimal effect on her ability to perform basic work related activity
15        for a period of 12 months or more.

16    AR 20. Regarding Plaintiff's neuropathy and leg pain, the ALJ noted that "a nerve

17    conduction study from April 2008 was normal and showed no evidence of

18    lumbosacral radiculopathy or peripheral neuropathy in the lower extremities." *Id.*

19    Regarding Plaintiff's migraines, the ALJ assessed that while Plaintiff's records

20    from Veterans Affairs reflect a 30 percent disability for migraines, Plaintiff's only

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 10

complaint of migraines during the relevant period was in August 2007 and Plaintiff reported in March of 2008 that her migraines were under control. *Id.*

At Step two, the claimant bears the burden of showing a medically "severe impairment" or "combination of impairments." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Even so, the burden is slight, as Step two is a "de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (alterations omitted). An impairment is "severe" unless the medical evidence clearly establishes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c).

In light of this de minimis standard, the Court agrees with Plaintiff that the ALJ erred by assessing her neuropathy and migraine headaches as nonsevere impairments. Regarding Plaintiff's neuropathy and leg pain, medical records reveal that Plaintiff presented to a primary care provider complaining of bilateral leg pain existing for ten years. AR 668. The notes indicate that Plaintiff experienced a constant "dull heated throb," which is made worse by walking and standing. *Id.* Treatment notes from May of 2008 also describe that upon examination, Plaintiff was assessed with "shin splints, chronic ankle pain, and flexible pes planus." AR 597. The notes further describe that Plaintiff's "medial and lateral ankle ligaments bl are painful to palpation." *Id.* In June of 2008, Plaintiff's treating provider

assessed Plaintiff as a "30 year old woman with a hx of bilateral shin splints now with chronic shin pain that is concerning for chronic shin splints as well as small fiber peripheral neuropathy." AR 585. An assessment in June of 2008 indicated a similar diagnosis. AR 584. Regarding Plaintiff's migraine headaches, medical records indicate that Plaintiff presented to an emergency department in April of 2007 for worsening migraine headaches and nausea. AR 433. The notes indicate "sharp" head pain that radiates to the back of the head. AR 434. Medical notes from April of 2008 also list neuropathy and migraines as "active problems," AR 631, and show that Plaintiff was prescribed medication for each ailment, AR 634.

Yet, despite these well-documented symptoms and diagnoses, the ALJ assessed Plaintiff's neuropathy and leg pain and migraine headaches as nonsevere impairments. In so concluding, the ALJ noted that a nerve conduction study did not show evidence of "lumbosacral radiculopathy or peripheral neuropathy in the lower extremities" and that Plaintiff only complained once of migraines and later reported they were under control. But the ALJ did not otherwise comment on Plaintiff's leg pain and related symptoms—such as shin splints—or explain why Plaintiff's migraine headaches were nonsevere before the date she reported them as under control. There was substantial medical evidence before the ALJ showing that Plaintiff's neuropathy and leg pain and migraine headaches were more than slight abnormalities causing more than minimal functional limitations. As such, the Court

finds that the ALJ erred in assessing Plaintiff's neuropathy and leg pain and migraine headaches as nonsevere impairments.

These errors were not harmless. If step two is decided in a claimant's favor, any alleged error may be harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). So long as the ALJ considers the limitations resulting from the disorder, failing to find the disorder severe is harmless error. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Lorenzo B. v. Saul*, No. 19-CV-0786-AGS, 2020 WL 4732063, at *1 (S.D. Cal. Aug. 14, 2020) ("An ALJ's erroneous omission of an impairment at Step 2 is harmless when the ALJ 'nonetheless considers the limitations posed by the impairment' at a later step in the inquiry."). Here, step two was decided in Plaintiff's favor. Though the ALJ assessed Plaintiff's neuropathy and leg pain and migraine headaches as nonsevere impairments, the ALJ stated that she "still considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing her residual functional capacity." AR 20. But in assessing Plaintiff's residual functional capacity, the only reference the ALJ made to Plaintiff's leg pain was her observation that Plaintiff reported neuropathy, that she was observed to "heel-and toe-walk comfortably," and that a study showed no peripheral neuropathic process in the lower extremities. AR 23–24. The ALJ, however, did not discuss Plaintiff's documented shin splints or ankle pain, and did not reference Plaintiff's neuropathy and leg pain symptoms after Plaintiff's

observation in April of 2008, even though most of her symptoms were documented in May and June of 2008. Regarding Plaintiff's migraine headaches, the ALJ's written decision does not reflect that she considered the limitations posed by the impairment at a later step in the inquiry. Accordingly, the ALJ's error was not harmless and the Court remands with instructions to analyze step three with respect to Plaintiff's neuropathy and leg pain and migraine headache impairments.

**C.      The ALJ did not provide an adequate explanation at step three.**

At step three, the ALJ found that Plaintiff's impairments did not satisfy the requirements of any listing. AR 20–23. At this step, Plaintiff contends that the ALJ erred by "failing to conduct an adequate analysis and failing to consider evidence of record supporting Listing level impairments." ECF No. 11 at 15.

Plaintiff bears the burden of proving that she suffers from an impairment that meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To do so, Plaintiff must "specify which listing she believes she meets or equals," and must "set forth [] evidence which would support the diagnosis and findings of a listed impairment." *Id.* "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, Plaintiff challenges the ALJ's conclusion that Plaintiff's mental impairments do not meet or equal a listed impairment. ECF No. 11 at 15–16. The

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 14

ALJ considered Listings 12.04 and 12.06, and in particular, whether paragraph C

criteria for these listings were satisfied. AR 21–22. To satisfy paragraph C criteria

for each of these listings, a claimant must show that her mental disorder is "serious

and persistent," and there is evidence of (1) [m]edical treatment or the like; and (2)

marginal adjustment, meaning "minimal capacity to adapt to changes in your

environment or to demands that are not already part of your daily life." 20 C.F.R. §

Pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C).

In determining Plaintiff failed to establish the paragraph C criteria for

Listings 12.04 and 12.06, the ALJ stated:

> The undersigned has also considered whether the "paragraph C"
> criteria were satisfied. In this case, the evidence fails to establish the
> presence of the "paragraph C" criteria. No medical source opined that
> the claimant's conditions satisfied the "C" criteria, and the
> undersigned does not find otherwise.

AR 22.

This is precisely the type of conclusory and boilerplate finding the Ninth

Circuit has cautioned against. *See Lewis*, 236 F.3d at 512; *Marcia v. Sullivan*, 900

F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing

under step three of the Secretary's disability evaluation process, the ALJ must

explain adequately his evaluation of alternative tests and the combined effects of

the impairments."). While the ALJ notes that she did not find that Plaintiff's

conditions satisfied the paragraph C criteria, she does not provide any explanation

supporting this assessment. The Court therefore cannot meaningfully evaluate whether the ALJ's finding is supported by substantial evidence, and the Court will remand this matter with instructions to reevaluate whether Plaintiff's mental impairments establish the paragraph C criteria for Listings 12.04 and 12.06. In so holding, however, the Court agrees with Defendant that the ALJ is not affirmatively required to ask a psychological expert whether the paragraph C criteria is established. Rather, the Court leaves this decision to the ALJ's discretion.

**D.    Assessment of Plaintiff's subjective complaints**

Plaintiff argues that the ALJ erred by rejecting her subjective complaints. An ALJ "must make a specific finding as to the credibility of the [Plaintiff's] subjective complaints of pain, though the Secretary need not accept those complaints if they are unsupported by objective findings." *Swanson v. Sec'y of Health & Hum. Servs.*, 763 F.2d 1061, 1064 (9th Cir. 1985). "While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a reviewing court will not affirm the ALJ's determination "unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884–85 (9th Cir. 2006).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 23. First, it appears

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 16

the ALJ discounted Plaintiff's testimony in part because her mental health improved with medication. AR 25–26. An ALJ may discount a claimant's subjective complaints if the record shows effective treatment. 20 C.F.R. § 404.1529(c)(3)(iv)–(v). Here, the record shows that Plaintiff first reported improvement due to medication in May of 2008. While Plaintiff's improvement is a legitimate reason to discount her subjective complaints, the ALJ did not explain why she discounted Plaintiff's mental health complaints prior to May of 2008. Plaintiff alleges a disability onset date in April of 2007, more than one year before Plaintiff reported any improvement. Nevertheless,, the Court finds that the ALJ reasonably relied on Plaintiff's gap in treatment to discount her mental health complaints. AR 25; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (an ALJ may properly discredit subjective complaints due to "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.").

The ALJ also discounted Plaintiff's complaints because she was seeking work and maintained employment through periods of the alleged disability, stating that Plaintiff "clearly believed she was capable of working during the relevant period, and her actions in seeking employment contradict her claims of an inability to work." AR 26. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). While ALJs may properly consider employment history and the Plaintiff's actions in seeking employment, "occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996); see also *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." (emphasis in original)).

The record shows that Plaintiff stated in January of 2008 that she was attempting to find work. *See* AR 26. Plaintiff then briefly began working at a shipyard in May of 2008, though this job was "short-lived." *Id.* And in August of 2008, Plaintiff reported that she was again looking for work. The record here is distinguishable from that in *Bray*. There, the Ninth Circuit noted that the claimant had "worked as a caregiver for two years, and [] sought out other employment." *Bray*, 554 F.3d at 1227. Here, Plaintiff's employment history is not the type of sustained employment an ALJ may properly rely on to discount Plaintiff's claims of an inability to work. Rather, Plaintiff's actions in seeking employment and her employment history during the relevant period are sporadic and do not discredit Plaintiff's claims of an inability to *maintain* employment. The Court therefore finds

that the ALJ erred in discounting Plaintiff's subjective characterization of her symptoms based on Plaintiff's response to medication[4] and her actions in working and otherwise seeking employment.

## E.    Vocational Expert

Finally, Plaintiff argues that the ALJ erred by failing to call a vocation expert at step five. ECF No. 11 at 20. To determine whether there are a significant number of jobs in the national economy that the claimant can perform, an ALJ may call a vocational expert or reference the Medical-Vocational Guidelines. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines," and instead must call a vocational expert. *Id.* Examples of non-exertional limitations include "pain, postural limitations, or environmental limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

At step five, the ALJ concluded that Plaintiff's limitations were adequately covered by the grids and thus did not call a vocational expert. AR 27 ("The limitations she had did not significantly erode the occupational base of the millions of jobs available at the sedentary, light, and medium levels of exertion."). Having already decided that remand is necessary, the Court directs the ALJ to call a

---

[4] The ALJ erred in discounting Plaintiff's subjective complaints based on her response to medication only for the symptoms Plaintiff described occurring prior to May of 2008, when Plaintiff first reported improvement.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 19

vocational expert at step five. A review of the record shows significant non-exertional impairments; such as only superficial and occasional interactions with the public; inability to perform unfamiliar tasks; limitations in understanding, remembering, or applying information; limitations in concentrating, persisting, and maintaining pace; and limitations in Plaintiff's ability to adapt to new situations and manage herself. Given these limitations, it is perplexing to the Court that the ALJ assessed Plaintiff as capable of performing the full range of medium work without calling a vocational expert. The ALJ is directed to do so on remand.

## F.    Remand

The Court declines to reverse for an immediate award of benefits. The Court cannot determine that remand would only delay an award to Plaintiff. *Cf. Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The Court therefore remands so that an ALJ may make a determination based on further proceedings consistent with this Order.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3.    The Clerk's Office shall **ENTER JUDGMENT** for **PLAINTIFF** and

1    **CLOSE** the file.

2    **4.**    This matter shall be **REMANDED** to the Social Security

3    Administration for further proceedings consistent with this order.

4    **IT IS SO ORDERED.** The Clerk's Office shall enter this Order and provide

5    copies to all counsel.

6    **DATED** this 11th day of May 2022.

7    _____
     SALVADOR MENDOZA, JR.

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT – 21